**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

DEVORA PAGÁN-GONZÁLEZ,
MADELINE GONZÁLEZ-MAISONET,

    **Plaintiffs,**

          **v.**                  **Civil No.** 21-1275(FAB)

UNITED STATES OF AMERICA,

    **Defendant.**

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

    Before the Court is plaintiffs Devora Pagán-González ("Pagán-González") and Madeline González-Maisonet ("González-Maisonet") (collectively, "plaintiffs")'s motion for a temporary restraining order ("TRO"). (Docket No. 4.) For the reasons set forth below, the TRO motion is **DENIED**.

**I.   Background**

    On June 3, 2021, the plaintiffs attempted to import two French Bulldogs into the United States from Colombia. The United States Department of Health and Human Services ("HHS") denied the dogs entry for two reasons. (Docket No. 1, Ex. 2.) First, the birth certificates for the dogs indicated that the animals were 12 and 18 weeks old on the date of arrival to the United States. (Docket No. 1, Ex. 4 at p. 1.) An examination by a certified Center for Disease Control ("CDC") veterinarian revealed, however, that the

dogs are in fact 7 to 9 weeks old. <u>Id.</u> Accordingly, HHS "reasonably believed" that the documentation submitted by Pagán-González and González-Maisonet was false. Second, dogs are generally eligible for the rabies vaccine at 12 weeks of age. <u>Id.</u> The Code of Federal Regulations provides that individuals seeking to import dogs from foreign jurisdictions must present a "valid rabies vaccination certificate." 42 C.F.R. § 71.51. The rabies immunization records purport, however, that the dogs received the vaccine in Colombia before the 12-week threshold. Accordingly, HHS has determined that the rabies immunization records are also suspect. <u>Id.</u> at p. 2.

Federal officers removed the dogs from the plaintiffs' custody, placing the animals in quarantine. (Docket No. 1 at p. 3.) Because the dogs are unfit for entry into the United States, they "shall be exported or destroyed." 42 C.F.R. 71.51(g). The plaintiffs appealed this decision on June 9, 2021. (Docket No. 1, Ex. 4 at p. 1.) The HHS Director for the Division of Global Migration and Quarantine denied the appeal on June 10, 2021. <u>Id.</u> Pursuant to this decision, the dogs shall be exported to Colombia. <u>Id.</u>

The TRO motion requests that the Court enjoin HHS from removing the dogs from the United States, citing the Animal Welfare Act of 1966, 7 U.S.C. section 2131, and the Due Process Clause of the Fifth Amendment of the United States Constitution. (Docket

No. 4 at p. 2.)   The Court need not address the merits of the TRO motion, however, because the plaintiffs failed to comply with Federal Rule of Civil Procedure 65(b) ("Rule 65(b)").

## II.   Federal Rule of Civil Procedure 65

Pursuant to Rule 65(b)(1), the Court may grant an *ex parte* motion for injunctive relief if two conditions are satisfied:

(A)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

**(B)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.**

Fed. R. Civ. P. 65(b)(1). (emphasis added).   This rule imposes "stringent restrictions on the availability of *ex parte* temporary restraining orders." PC Connection, Inc. v. Bartrug, Case No. 07-306, 2007 U.S. Dist. LEXIS 74130 *2—3 (D.N.H. Oct. 3, 2007).

## III. Discussion

A certification from the plaintiff's attorney regarding any attempt to provide notice to defendant United States regarding the TRO motion is absent from the record.   Defendant United States is known and accessible.   *Ex parte* orders are warranted when "notice to the adverse party is impossible, as in the case where the adverse party is unknown or unable to be found." First Tech safety Sus. V. Depinet, 11 F.3d 641, 650 (6th Cir. 1993).   Counsel for the plaintiff need only contact the United States, a known and

accessible defendant, by notifying the United States Attorney, an office that plaintiff's attorney, a known and experienced criminal defense attorney, must contact often. Nor does the plaintiff's attorney explain why notice should not be required prior to the issuance of *ex parte* injunctive relief against the United States.

"To insure that the rights of all concerned are protected, Rule 65(b) prescribes certain safeguards for the issuance of temporary restraining orders that must be scrupulously honored." 11A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2952 (2d ed. 1995); see Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 438-39 (1974) ("[Rule 65's] stringent restrictions . . . reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute").  The plaintiffs have failed to navigate these safeguards properly, most distinctly by foregoing the attorney's certification of attempts to give defendant United States notice of the pending request for *ex parte* injunctive relief.  This failure is fatal to the TRO motion.

Accordingly, plaintiff's motions for an *ex parte* TRO and an expedited hearing are **DENIED.**[1]

## IV.  Conclusion

For the reasons set forth above, the motion for an *ex parte* TRO is **DENIED.**  (Docket No.4.)  The Court **ORDERS** the plaintiffs to serve process on the United States, copies of all filings in this case, and a copy of this Memorandum and Order, no later than **5:00 p.m. on Tuesday, June 15, 2021.**  Once service of process on the United States is complete, the Court will schedule a preliminary injunction hearing.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 11, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[1] Pagán-González and González-Maisonet allege that HHS is "taking [property] valued at $6,000.00 without just compensation."  (Docket No. 1 at p. 8.)  This assertion suggests that money damages are sufficient to remedy the harm purportedly suffered the plaintiffs.  The loss of economic harm, however, does not constitute "irreparable injury" because the financial loss can be remedied with money damages.  See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."); CMM Cable Rep., Inc. v. Ocean Cost Props., 48 F.3d 618, 622 (1st Cir. 1995) (holding that "an entitlement to money damages, without more, rarely constitutes an adequate basis for injunctive relief").